No. 22-55265 and 22-55296

# In the United States Court of Appeal for the Ninth Circuit

MOSAFER, INC.; MOSAFER E-COM, INC.; GOMOSAFER
*Plaintiffs/Appellants,*

*v.*

ELLIOTT BROIDY; BROIDY CAPITAL MANAGEMENT, LLC;
CIRCINUS, LLC; GEORGE NADER
*Defendants/Appellees.*

*and*

ELLIOTT BROIDY; BROIDY CAPITAL
MANAGEMENT, LLC; CIRCINUS, LLC,
*Counter-Complainants/Cross-Appellants,*

*v.*

MOSAFER, INC.; MOSAFER E-COM, INC.; GOMOSAFER; STATE OF
QATAR; ABU ISSA HOLDING WLL; ASHRAF ABU ISSA; NABIL ABU ISSA
*Counter-Defendants/Cross-Appellees.*

─────────────────────────────────

On Appeal from the U.S. District Court for Central California
CASE NO. 2:21-CV-06320- MCS-JC
THE HONORABLE MARK C. SCARSI

**APPELLANTS' REPLY BRIEF AND
CROSS-APPELLEES' ANSWERING BRIEF**

*STEPHEN G. LARSON (SBN 145225)
PAUL A. RIGALI (SBN 262948)
JONATHAN D. GERSHON (SBN 306979)*
**LARSON LLP**
555 S. FLOWER STREET, 44TH FLOOR
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: (213) 436-4888
FACSIMILE: (213) 623-2000
EMAIL: SLARSON@LARSONLLP.COM
*Counsel for Mosafer, Inc.; Mosafer E-Com, Inc.; Gomosafer; Abu Issa Holding
WLL; Ashraf Abu Issa; and Nabil Abu Issa*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants Mosafer, Inc., Mosafer E-Com, Inc., Gomosafer, Abu Issa Holding WLL; Ashraf Abu Issa; and Nabil Abu Issa state:

- Mosafer Inc. is a corporation that has no parent company. No publicly held corporation owns 10% or more of Mosafer Inc.'s stock;

- Mosafer E-Com, Inc. is a corporation that is fully owned by Mosafer Inc. No publicly held corporation owns 10% or more of Mosafer E-Com, Inc.'s stock;

- GoMosafer is the online division of Mosafer Travel, a Qatari travel agency. Mosafer Travel and Tourism is fully owned by Abu Isa Holding, a Qatari company. No publicly held corporation owns 10% or more of GoMosafer's stock.

- Abu Issa Holding WLL is a limited liability company that has no parent company. No publicly held corporation owns 10% of Abu Issa Holding WLL.

- i -

Dated: March 3, 2023                    **LARSON LLP**


By: _/s/ Stephen G. Larson_
    Stephen G. Larson
    Paul A. Rigali
    Jonathan D. Gershon

*Attorneys for Mosafer, Inc.; Mosafer E-Com,
Inc.; Gomosafer; Abu Issa Holding WLL;
Ashraf Abu Issa; and Nabil Abu Issa*

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF CONTENTS.........................................................................iii

TABLE OF AUTHORITIES ...................................................................vi

REPLY BRIEF OF APPELLANTS ...........................................................1

   INTRODUCTION .................................................................................1

   ARGUMENT.........................................................................................3

      I.    THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' ANTI-SLAPP MOTIONS BECAUSE PLAINTIFFS' CLAIMS ARISE OUT OF DEFENDANTS' ILLEGAL CONDUCT AND ARE NOT CONSTITUTIONALLY PROTECTED CONDUCT ................................................................3

          A.    The District Court Erred in Requiring Mosafer to Introduce Evidence of Illegal Conduct at Step One of the anti-SLAPP Analysis.................................5

          B.    The District Court Should Have Considered at Step Two of the anti-SLAPP Analysis Whether Mosafer Sufficiently Alleged Illegal Conduct ...............11

      II.    THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS DID NOT STATE A CLAIM FOR A VIOLATION OF THE UNLAWFUL PRONG OF THE UCL................................................................................14

          A.    The Complaint Sufficiently Alleged that Defendants' FARA Violations Harmed Mosafer..........14

          B.    The Complaint Sufficiently Alleged that Defendants' FARA Violations Arose from a Business Practice ........................................................16

          C.    Mosafer's Claim under the Unlawful Prong of the UCL can be Based on a FARA Violations....................18

III. THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS FAILED TO STATE A CLAIM BECAUSE PLAINTIFFS ALLEGED HARM INTENTIONALLY CAUSED BY KNOWINGLY MAKING FALSE STATEMENTS ........................................... 23

    A.   Mosafer Alleged a Valid Injurious Falsehood Claim ................................................................................. 23

    B.   The Statute of Limitations Does Not Bar Mosafer's Injurious Falsehood Claim ........................... 27

        1.   The Statute of Limitations was Tolled by the Discovery Rule ................................................... 27

        2.   Defendants' Fraudulent Concealment Tolled the Statute of Limitations ..................................... 29

CONCLUSION ........................................................................ 30

ANSWERING BRIEF OF CROSS-APPELLEES ......................... 31

INTRODUCTION ................................................................... 31

I. THE DISTRICT COURT PROPERLY STRUCK THE BROIDY PARTIES' COUNTERCLAIM FOR ABUSE OF PROCESS .................................................................... 31

    A.   The Conduct Alleged in the Abuse of Process Counterclaim Is Constitutionally Protected Speech ....... 32

    B.   The Broidy Parties Did Not Satisfy Their Burden of Showing They Were Likely to Prevail on Their Abuse of Process Claim ................................................ 34

        1.   The Broidy Parties' Abuse of Process Claim Is Barred by the Absolute Litigation Privilege ............................................................... 35

        2.   The Broidy Parties Have Not Sufficiently Stated a Claim for Abuse of Process .................... 39

            a.   The Broidy Parties have not alleged that the Mosafer Parties committed a wrongful act using process ......................... 39

b. The Broidy Parties have not established that the Mosafer Parties entertained an ulterior motive in using process ....................................................43

II. THE DISTRICT COURT PROPERLY STRUCK THE BROIDY PARTIES' COUNTERCLAIM FOR BUSINESS CONSPIRACY ....................................................45

A. Virginia Law Does Not Apply to the Broidy Parties' Counterclaims ....................................................46

B. The Broidy Parties Fail to State a Claim for Business Conspiracy ....................................................50

III. THE DISTRICT COURT PROPERLY DISMISSED THE BROIDY PARTIES' CLAIM FOR RICO CONSPIRACY ....................................................52

CONCLUSION ....................................................57

STATEMENT OF RELATED CASES ....................................................59

CERTIFICATE OF COMPLIANCE ....................................................60

CERTIFICATE OF SERVICE ....................................................61

ADDENDUM OF STATUES AND RULES ....................................... Addendum-1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Agency for Int'l Dev. v. All for Open Soc'y Int'l, Inc.*,
  140 S. Ct. 2082 (2020).........................................................................33

*Ahmadi Abhari v. Victory Park Capital Advisors*,
  2020 WL 7346676 (C.D. Cal. Nov. 16, 2020) ...................................56

*Ajzenman v. Office of Commissioner of Baseball*,
  487 F.Supp.3d 861 (C.D. Cal. 2020) ...........................................47, 48

*Almond Hill Sch. v. United States Dep't of Agric.*,
  768 F.2d 1030 (9th Cir. 1985) .................................................20, 21, 22

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)...........................................................................56

*Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of
  Land Mgmt.*,
  273 F.3d 1229 (9th Cir. 2001) ...........................................................24

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005)...........................................................................21

*Beck v. Prupis*,
  529 U.S. 494 (2000)...........................................................................57

*Broidy Capital Mgmt., LLC v. Benomar*,
  No. 7:18-cv-06615-CS (S.D.N.Y. July 23, 2018) .............................31

*Broidy Capital Mgmt., LLC v. Muzin*,
  No. 1:19-cv-00150-DLF (D.D.C. Jan. 24, 2019) ..............................31

*Broidy Capital Mgmt., LLC v. Qatar*,
  No. 2:18-cv-02421-JFW-E (C.D. Cal. Mar. 26, 2018)......................31

*Broidy v. Global Risk Advisors LLC*,
  No. 1:19-cv-11861-MKV (S.D.N.Y. Dec. 27, 2019) ........................31

*Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*,
  448 F. Supp. 2d 1172 (C.D. Cal. 2006) ............................................................12

*Chabner v. United of Omaha Life Ins. Co.*,
  225 F.3d 1042 (9th Cir. 2000) .........................................................................19

*Coleman v. Sterling*,
  2010 WL 11508571 (S.D. Cal. Mar. 24, 2010) ...............................................5

*Cox v. Mariposa Cnty.*,
  445 F. Supp. 3d 804 (E.D. Cal. 2020) ..........................................................5, 12

*DaVinci Aircraft, Inc. v. U.S.*,
  926 F.3d 1117 (9th Cir. 2019) .........................................................................39

*Doe v. Gangland Prods., Inc.*,
  730 F.3d 946 (9th Cir. 2013) ...........................................................11, 41, 42

*E. Sav. Bank, FSB v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014) ...................................................................53, 54

*Fairfax v. CBS Corp.*,
  2 F. 4th 286 (4th Cir. 2021) ............................................................................51

*Ferrington v. McAfee, Inc.*,
  2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...................................................22

*Gov't Emps. Ins. v. Google, Inc.*,
  330 F. Supp. 2d 700 (E.D. Va. 2004) ..............................................................51

*Grauberger v. St. Francis Hosp.*,
  169 F. Supp. 2d 1172 (N.D. Cal. 2001) .......................................................53, 54

*Gross v. CitiMortgage, Inc.*,
  33 F.4th 1246 (9th Cir. 2022) .........................................................................16

*Guillory v. WFS Fin., Inc.*,
  2007 WL 879017 (N.D. Cal. Mar. 21, 2007) ...................................................43

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) .........................................................................................56

*Hartless v. Clorox Co.*,
2007 WL 3245260 (S.D. Cal. Nov. 2, 2007)................................................20, 22

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ..........................................................................7, 11

*Huerta-Guevara v. Ashcroft*,
321 F.3d 883 (9th Cir. 2003) ................................................................................24

*Ibarra-Flores v. Gonzales*,
439 F.3d 614 (9th Cir. 2006) ................................................................................24

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
424 F. Supp. 3d 882 (E.D. Cal. 2019) ................................................................42

*Kearney v. Foley & Lardner, LLP*,
607 F. App'x 757 (9th Cir. 2015) ......................................................................55

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
431 F.3d 353 (9th Cir. 2005) ................................................................................52

*Lunsford v. Am. Guarantee & Liab. Ins. Co.*,
18 F.3d 653 (9th Cir. 1994) ..................................................................................40

*Mattel, Inc. v. MGA Ent't, Inc.*,
2010 WL 11463911 (C.D. Cal. Sept. 3, 2010) ....................................................57

*Methodist Hosp. of S. California v. Blue Cross of California*,
2010 WL 11508022 (C.D. Cal. Feb. 26, 2010) ....................................................52

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ..............................................................................26

*Newton v. Am. Debt Servs., Inc.*,
2014 WL 806152 (N.D. Cal. Feb. 27, 2014)................................................20, 22

*OSU Student All. v. Ray*,
699 F.3d 1053 (9th Cir. 2012) ..............................................................................15

*Owens v. Chasko*,
2011 WL 3163261 (E.D. Cal. July 26, 2011)......................................................41

*In re Packaged Seafood Prod. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017)................................................49

*Palestine Info. Off. v. Shultz*,
  853 F.2d 932 (D.C. Cir. 1988)............................................................19

*Planned Parenthood Federation of America, Inc. v. Center for
  Medical Progress*,
  890 F.3d 828 (9th Cir. 2018) .....................................................*passim*

*Safari Club Int'l v. Rudolph*,
  862 F.3d 1113 (9th Cir. 2017) ............................................................7

*Saul v. United States*,
  928 F.2d 892 (9th Cir. 1991) .............................................................54

*Schneider v. California Dept. of Corrections*,
  151 F.3d 1194 (9th Cir. 1998) ...........................................................54

*Senne v. Kansas City Royals Baseball Corp.*,
  934 F.3d 918 (9th Cir. 2019) .............................................................47

*Smith v. Wolf*,
  2021 WL 856996 (S.D. Cal. Mar. 8, 2021) ..................................33, 39

*Spotlight Ticket Mgmt., Inc. v. Stubhub, Inc.*,
  2020 WL 4342260 (C.D. Cal. May 22, 2020)....................................55

*Stone Castle Fin. Inc. v. Friedman, Billings, Ramsey & Co.*,
  191 F. Supp. 2d 652 (E.D. Va. 2002) ...............................................52

*SuperGuide Corp. v. Gemstar Dev. Corp.*,
  2010 WL 11463159 (C.D. Cal. June 3, 2010).............................44, 45

*In re Swine Flu Prod. Liab. Litig.*,
  764 F.2d 637 (9th Cir. 1985) .............................................................28

*Syed v. M-I, LLC*,
  853 F.3d 492 (9th Cir. 2017) .............................................................28

*T.P. v. Walt Disney Parks & Resorts U.S., Inc.*,
  2021 WL 3598574 (C.D. Cal. Apr. 20, 2021)....................................47

*United States v. Kirilyuk*,
29 F.4th 1128 (9th Cir. 2022) ...............................................................24

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) .................................................................28

*Ward v. Westinghouse Canada, Inc.*,
32 F.3d 1405 (9th Cir. 1994) .................................................................27

**California Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ............................................................................37

*Barquis v. Merchants Collection Ass'n*,
7 Cal. 3d. 94 (1972) ........................................................................39, 40

*BBBB Bonding Corp. v. Caldwell*,
73 Cal. App. 5th 349 (2021) .................................................................20

*Bernson v. Browning-Ferris Indus.*,
7 Cal. 4th 926 (1994) ............................................................................29

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..........................................................................20

*Coleman v. Gulf Ins. Grp.*,
41 Cal. 3d 782 (1986) ...........................................................................39

*Cox v. Griffin*,
34 Cal. App. 5th 440 (2019) .................................................................37

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006) ...................................................................*passim*

*Fremont Reorganizing Corp. v. Faigin*,
198 Cal. App. 4th 1153 (2011) .............................................................10

*Hartford Casualty Ins. Co. v. Swift Distr., Inc.*,
59 Cal. 4th 277 (2014) ....................................................................23, 25

*Hernandez v. Burger*,
  102 Cal.App.3d 795 (1980) ...................................................49

*Herzog v. "A" Co.*,
  138 Cal. App. 3d 656 (1982) .............................................37, 38

*Hurtado v. Superior Court*,
  11 Cal.3d 574 (1974) ...........................................................49

*JSJ Ltd. P'ship v. Mehrban*,
  205 Cal. App. 4th 1512 1521 (2012) ...................................32

*Kurtin v. Elieff*,
  155 Cal. Rptr. 3d 573 (Cal. Ct. App. 2013), *as modified on denial
  of reh'g* (May 8, 2013)........................................................42

*Law Offices of Matthew Higbee v. Expungement Assistance Servs.*,
  214 Cal. App. 4th 544 (2013) .............................................14

*Mendoza v. ADP Screening & Selection Servs., Inc.*,
  182 Cal. App. 4th 1644 (2010) ...........................................10

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) .....................................................11, 34

*Nelson v. Indevus Pharmaceuticals, Inc.*,
  142 Cal. App. 4th 1202 (2006) ...........................................27

*Neville v. Chudacoff*,
  160 Cal. App. 4th 1255 (2008) ...........................................38

*Olsen v. Harbison*,
  191 Cal. App. 4th 325 (2010) .............................................35

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma,
  Inc.*,
  42 Cal. 3d 1157 ..................................................................40

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) ......................................................40

*Paul for Council v. Hanyecz*,
    85 Cal. App. 4th 1356 (2001) .................................................................12

*Polygram Recs., Inc. v. Superior Ct.*,
    170 Cal. App. 3d 543 (1985) ...........................................................23, 25

*Rose v. Bank of Am., N.A.*,
    57 Cal. 4th 390 (2013) ............................................................20, 21, 23

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006) ...............................................35, 36, 38, 41

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990) ......................................................................35, 36

*Soukup v. Law Offices of Herbert Hafif*,
    39 Cal. 4th 260 (2006) .............................................................................3

*Spellens v. Spellens*,
    49 Cal. 2d 210 (1957) ...........................................................................43

*Unruh-Haxton v. Regents of Univ. of California*,
    162 Cal. App. 4th 343 (2008) ............................................................27

*Vivian v. Labrucherie*,
    214 Cal. App. 4th 267 (2013) ............................................................37

*Wentland v. Wass*,
    126 Cal. App. 4th 1484 (2005) .........................................................37

*Younger v. Solomon*,
    38 Cal. App. 3d 289 (1974) ................................................................43

*Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) .........................................................................22

**Other State Cases**

*Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*,
    299 Va. 579 (2021) ...............................................................................51

**Federal Statutes**

18 U.S.C § 1962 ...................................................................................*passim*

22 U.S.C.
    § 611(c) ...........................................................................................19
    § 611(d) ...........................................................................................19

**California Statutes**

Cal. Bus. & Prof. Code § 17200 .....................................................*passim*

Cal. Civ. Code § 47(b) ..........................................................................35

Cal. Civ. Proc. Code § 425.16 ........................................................2, 4, 5

**Other Authorities**

Fed. R. Civ. P.
    Rule 8 ..............................................................................................6, 7
    Rule 12(b)(6)...............................................................................*passim*
    Rule 56 .................................................................................................7

Rest. 2d Torts § 623A ....................................................................23, 26

US. Const., Amend. I ...................................................................2, 13, 44

## <u>REPLY BRIEF OF APPELLANTS</u>

## <u>INTRODUCTION</u>

Plaintiffs Mosafer, Inc., Mosafer E-Com, Inc., and GoMosafer's (collectively, "Mosafer" or "Plaintiffs") Complaint sufficiently alleged that the United Arab Emirates ("UAE") paid Defendants Elliot Broidy ("Broidy"), Broidy Capital Management, LLC ("BCM"), Circinus, LLC ("Circinus") (collectively, the "Broidy Parties") and George Nader ("Nader") (with the Broidy Parties, "Defendants") hundreds of millions of dollars to conduct the Disinformation Conspiracy that was intended to damage businesses associated with the UAE's rival, Qatar. To ensure that the Disinformation Conspiracy was successful, Defendants used aliases, contractors, and fake social media accounts so that the publications appeared to be authentic and legitimate political speech. To that end, Defendants failed to register under the Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611 *et seq*. as agents of the UAE, or otherwise disclose their involvement in this Disinformation Conspiracy. Moreover, the publications themselves failed to disclose that they were paid-for foreign propaganda, in violation of FARA's labeling requirements.

This Disinformation Conspiracy caused hundreds of millions of dollars in damages to Mosafer, prompting them to file the Action against Defendants shortly after they uncovered its existence.

As explained in Mosafer's Opening Brief, because the Complaint alleged that the Disinformation Conspiracy was illegal under FARA, Defendants' conduct was not protected by the First Amendment and thus not protected by California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. Thus, the District Court erred in striking Mosafer's Complaint when it held that Defendants' conduct was protected by California's anti-SLAPP statute.[1]

Further, because Mosafer alleged that Defendants violated FARA, the District Court also erred in finding that Mosafer failed to sufficiently state a claim against Defendants for violation of the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code, §17200 ("UCL"). Contrary to Defendants' contention, because there is no explicit bar to the private enforcement of FARA, Mosafer was permitted to base its UCL claim on FARA violations.

Additionally, the District Court erred in failing to consider whether Mosafer had stated a claim for injurious falsehood. In dismissing the Complaint, the District Court focused only on whether Mosafer had failed to state a claim for trade libel because the publications did not specifically mention Mosafer or its products

---

[1] The Broidy Parties argue that GoMosafer is not a proper party to this appeal. Broidy Br. at n. 1. However, the District Court granted Defendants' anti-SLAPP motion against all of the Plaintiffs, including GoMosafer. Thus, although GoMosafer does not appeal the dismissal of its claims under Rule 12(b)(6), it may properly appeal the order granting Defendants' anti-SLAPP motion.

by name.  However, unlike trade libel, injurious falsehood does not require a specific statement about the plaintiff.  Thus, because the Complaint alleged each of the elements of injurious falsehood, the District Court erred in failing to consider whether the Complaint validly pled this cause of action.

Finally, the District Court erred in finding that the statute of limitations bars Plaintiffs' claim for injurious falsehood because Mosafer properly alleged that Defendants fraudulently concealed the existence of, and their involvement in, the Disinformation Conspiracy from Mosafer.  Therefore, Mosafer's claim was not barred by the statute of limitations under both the discovery rule and fraudulent concealment doctrine.

Accordingly, this Court should reverse the judgment below with respect to Defendants' anti-SLAPP motion.  The Court should also reinstate Plaintiffs' claims under the unlawful prong of the UCL and for injurious falsehood.

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' ANTI-SLAPP MOTIONS BECAUSE PLAINTIFFS' CLAIMS ARISE OUT OF DEFENDANTS' ILLEGAL CONDUCT AND ARE NOT CONSTITUTIONALLY PROTECTED CONDUCT

It is undisputed that the purpose of California's anti-SLAPP procedure is "to prevent and deter 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom and speech and petition for the redress of grievances.'"  *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 278 (2006)

(quoting Cal. Civ. Proc. Code, § 425.16(a)). However, "because not all speech or petition activity is constitutionally protected, not all speech or petition activity is protected by section 425.16." *Flatley v. Mauro*, 39 Cal. 4th 299, 316 (2006). Thus, California's anti-SLAPP statute does not apply to conduct which "was illegal and by reason of the illegality not constitutionally protected." *Id.* at 316.

Neither Defendants' answering briefs dispute that California's anti-SLAPP statute excludes illegal conduct, nor do they dispute that FARA violations constitute illegal conduct that is not constitutionally protected. Instead, Defendants maintain that the District Court properly applied California's *Flatley* standard to their federal anti-SLAPP motions, *see* Broidy Br. at 21-24; Nader Br. at 15-16, thus arguing that the District Court could not review whether their conduct was illegal when ruling on their motions because (1) at step one, the District Court could only determine whether there is "an admission or conclusive evidence" of illegal conduct, and (2) at step two, the District Court could only evaluate whether Mosafer sufficiently stated a claim against them, not evaluate whether their conduct was illegal. *See* Broidy Br. at 21-24; Nader Br. at 15-16. Defendants are incorrect on the law and their position conflicts with the Federal Rules of Civil Procedure ("FRCP"). Because Defendants only raised a challenge to the legal sufficiency of Mosafer's Complaint, *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018) provides that the

FRCP only require Mosafer to allege that Defendants' conduct was illegal and therefore not subject to anti-SLAPP protection, regardless of whether those allegations of illegal conduct are evaluated in step one or step two of the anti-SLAPP analysis. Simply put, the FRCP do not require Mosafer to present evidence supporting its allegations in response to a legal sufficiency challenge, and certainly not before Mosafer has been afforded the opportunity to conduct discovery. *See, e.g.*, *Cox v. Mariposa Cnty*, 445 F. Supp. 3d 804, 819 n.7 (E.D. Cal. 2020) (discovery is "warranted to the extent adjudication of the 'illegality' issue were required under the second prong of the anti-SLAPP analysis in this case."); *Coleman v. Sterling*, 2010 WL 11508571, at *7 (S.D. Cal. Mar. 24, 2010) (finding that a motion to strike was not "ripe for review" because plaintiff was entitled to conduct discovery to "show that Defendants were engaged in illegal conduct that is not protected by Section 425.16.").

Accordingly, because Mosafer sufficiently alleged that Defendants violated FARA, the District Court erred in granting their anti-SLAPP motions.

## A. The District Court Erred in Requiring Mosafer to Introduce Evidence of Illegal Conduct at Step One of the anti-SLAPP Analysis

The District Court held, erroneously, that Plaintiffs had not sufficiently established that Defendants' conduct was illegal because Mosafer failed to make a sufficient evidentiary showing of illegality in step one of the anti-SLAPP analysis.

Defendants argue, in support of that erroneous finding, that requiring evidence of illegality at step one of the anti-SLAPP analysis does not conflict with the FRCP. However, Defendants elected to only bring a legal sufficiency challenge, thus invoking the federal pleading standard under Rules 8 and 12(b)(6), which expressly prohibit the inclusion of evidence outside of the four corners of the complaint. Thus, the District Court committed reversible error by imposing *Flatley*'s requirement that Mosafer introduce conclusive evidence of illegality in step one of the anti-SLAPP analysis.

Specifically, Nader argues that requiring evidence of illegal conduct at step one does not conflict with the FRCP because the "Step One inquiry does *not* determine whether a defendant's anti-SLAPP motion will be *granted*" and "does *not* determine whether a plaintiff's claims are sufficiently pled" and Broidy claims that "the threshold step one inquiry of whether a defendant can invoke the anti-SLAPP statute at all finds no corollary, let alone a conflict, with any federal procedural rule." Nader Br. at 25; Broidy Br. at 23. Both are mistaken. When a defendant brings an anti-SLAPP motion challenging only the legal sufficiency of a complaint, it is analyzed as a Rule 12(b)(6) motion to dismiss. *See Planned Parenthood* 890 F.3d at 833. Thus, to prevail on an anti-SLAPP motion challenging the legal sufficiency of a complaint, the District Court must find <u>both</u> that (1) the defendant's conduct is protected by the anti-SLAPP statute, and (2) the

plaintiff's claims are sufficiently pled under Rule 12(b)(6)'s standard. *See id.*

Accordingly, a procedure which requires a plaintiff to produce evidence of

illegality, without first allowing for discovery into those allegations, conflicts with

Rules 8, 12, and 56 of the FRCP. *See id.* ("Requiring a presentation of evidence

without accompanying discovery would improperly transform the motion to strike

under the anti-SLAPP law into a motion for summary judgment without providing

any of the procedural safeguards that have been firmly established by the

[FRCP].").  Indeed, given the legal sufficiency challenge, Mosafer was not even

permitted to produce any such evidence of illegality. *See Herring Networks, Inc. v.*

*Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021) (finding that a plaintiff is not

permitted to introduce evidence in opposition to a legal sufficiency-based anti-

SLAPP motion).

Moreover, Defendants' reliance on *Safari Club* is misplaced. *See* Nader Br.

at 27; Broidy Br. at 21-23 (citing *Safari Club Int'l v. Rudolph*, 862 F.3d 1113,

1121 (9th Cir. 2017)).  *Safari Club,* which preceded *Planned Parenthood*, only

involved a <u>factual sufficiency</u> challenge. *See* 862 F.3d at 1118-19.[2]  Following

---

[2] "Plaintiffs opposed the motions by relying only on the verified FAC, as opposed
to invoking any other evidence in the record.  The district court, however, looked
to the entire record, **including a declaration submitted by [defendant] with his**
***ex parte*** **application for a TRO**, which also appeared as an attachment to the
notice of removal." *Id.* at 1119 (emphasis added).  Thus, the underlying motion in
*Safari* was reviewed under Rule 56, not 12(b)(6).

*Planned Parenthood*, this Court has not ruled on whether *Flatley*'s requirement that a plaintiff introduce conclusive evidence of illegality at step one should apply in federal court to an anti-SLAPP motion that solely challenges the legal sufficiency of the Complaint. Although Defendants cite to a few district court cases which required evidence of illegality at step one of a legal sufficiency challenge, all are inapposite because none considered whether such an evidentiary requirement was permissible, let alone required, following *Planned Parenthood* and *Heritage Networks*.[3]

Notably, *Flatley*'s evidentiary requirement was based a defendant not having the burden to prove that its exercise of protected speech was legal in step one of the anti-SLAPP analysis. *See Flatley*, 39 Cal. 4th at 315. Thus, as explained in Mosafer's Opening Brief and in Section I.B. below, *Flatley* found that absent conclusive evidence, illegality should be considered in step two, where the plaintiff has the burden of proof. *See Flatley*, 39 Cal. 4th at 319-20 ("[O]rdinarily any claimed illegitimacy of the defendant's conduct must be resolved as part of a plaintiff's secondary burden to show that the action has 'minimal merit.'").

---

[3] *See* Broidy Br. at 23 (citing *Ekorus, Inc. v. Elohim EPF USA, Inc.*, 2020 WL 3891449, at *2 (C.D. Cal. Apr. 24, 2020); *Mogan v. Sacks, Ricketts & Case, LLP*, 2022 WL 94927 (N.D. Cal. Jan. 10, 2022); and *Nunes v. Meredith*, 2022 WL 2214205 (E.D. Cal. June 21, 2022)); Nader Br. at 25 (citing same and *Cox v. Mariposa Cnty.*, 445 F. Supp. 3d 804, 815 (E.D. Cal. 2020)).

However, the anti-SLAPP statute does not contemplate a legal sufficiency challenge at all, and thus *Flatley*'s reasoning only applies to a factual sufficiency challenge. Indeed, *Flatley*'s rationale is nonsensical in the context of a legal sufficiency challenge because the plaintiff has no evidentiary burden when responding to such a motion.

Nader's argument to the contrary is unconvincing. According to Nader, "if merely pleading illegality suffices . . . to invoke the exception, then defendants will in fact have to affirmatively prove validity at Step One." Nader Br. at 27. This argument is incorrect because if a defendant challenges the factual sufficiency of the complaint, then *Flatley*'s two-step procedure applies and the plaintiff must establish illegality at step one through conclusive evidence, after it has the opportunity to take discovery. However, if a defendant challenges the legal sufficiency of the complaint, no evidence should be considered at all—the sole focus should be on the Complaint's allegations. Accordingly, when evaluating a legal sufficiency challenge, no party has any evidentiary burden and there is no reason to require conclusive evidence of illegality in step one.

Finally, Defendants contend that if "the illegal conduct exception could be invoked whenever a plaintiff 'plausibly allege[s]' that the defendant has engaged in unlawful conduct," "the anti-SLAPP statute would be rendered meaningless" because "a plaintiff's complaint always alleges that a defendant has engaged in

illegal conduct, by violating some common law standard of conduct or statutory prohibition …." Broidy Br. at 25; Nader Br. at 26-27. Defendants' contention is incorrect for two reasons.

First, the exception is limited to <u>criminal conduct</u>. *See, e.g.*, *Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1654 (2010) ("Our reading of *Flatley* leads us to conclude that the Supreme Court's use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute."); *Fremont Reorganizing Corp. v. Faigin*, 198 Cal. App. 4th 1153, 1169 (2011) (collecting cases and holding that "consistent with these authorities… the rule from *Flatley*… is limited to criminal conduct"). Thus, few civil claims are subject to the illegal conduct exception.

Second, the anti-SLAPP statute would not be rendered meaningless because evaluating illegality under a Rule 12(b)(6) standard only applies to legal sufficiency challenges. A defendant who did not engage in illegal conduct remains free to bring a factual sufficiency challenge and thus a plaintiff cannot avoid anti-SLAPP scrutiny merely be alleging criminal conduct.

In sum, Defendants intentionally avoided a factual sufficiency challenge to preclude discovery into their criminal conduct. By only challenging the legal sufficiency, there is no reason to apply *Flatley*'s evidentiary requirements because *Flatley* only contemplated a factual sufficiency challenge. In federal court,

*Planned Parenthood* and *Herring Networks* allow for legal sufficiency challenges and have found that a plaintiff cannot be required (or even permitted) to produce evidence in response to a such a motion because that would conflict with the FRCP. Thus, the District Court committed reversible error by requiring Mosafer to introduce conclusive evidence of illegality in step one of the anti-SLAPP analysis.

### B. The District Court Should Have Considered at Step Two of the anti-SLAPP Analysis Whether Mosafer Sufficiently Alleged Illegal Conduct

Even if *Flatley*'s evidentiary requirements applied to a legal sufficiency challenge (and they do not), the District Court further erred by failing to consider whether Mosafer had sufficiently alleged illegal conduct at step two of the anti-SLAPP analysis.

As explained in Mosafer's Opening Brief, "<u>any claimed illegitimacy</u> of the defendant's acts is an issue which the plaintiff must raise and support in the second step of the analysis when the plaintiff bears the burden to show a probability of prevailing." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 954 (9th Cir. 2013) (emphasis added) (quotation omitted); *see also Flatley*, 39 Cal. 4th at 319-20; *Navellier v. Sletten*, 29 Cal. 4th 82, 94 (2002). Despite the fact that this Court and the California Supreme Court both clearly stated that <u>any</u> claimed illegitimacy could be raised in step two, Defendants contend that the District Court could only review whether Mosafer had sufficiently stated a claim. *See, e.g.*, Broidy Br. at 24;

Nader Br. at 30. However, while illegal conduct is typically analyzed in step one, district courts have considered it in step two of the anti-SLAPP analysis. *See, e.g.*, *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1187 (C.D. Cal. 2006) (finding that illegal conduct allegations were insufficient at step one but, following a step two analysis, the plaintiff "made a prima facie showing that" defendant's conduct was illegal and thus "not protected under the anti-SLAPP statute"); *Cox*, 445 F. Supp. 3d at 819 ("The Court finds that the question of illegality cannot be decided at the first step of the anti-SLAPP inquiry and must be reserved for adjudication (to the extent necessary) under the second prong." ).

Defendants have not even attempted to distinguish these cases, nor have they cited to a single case which has held that a plaintiff cannot establish illegal conduct in step two. Nor can they because *Flatley* held the opposite:

> If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step, but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits.

*Flatley*, 39 Cal. 4th at 316 (discussing *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356 (2001)).

Perhaps recognizing that his contention lacks support, Nader makes the erroneous policy argument that evaluating illegal conduct at step two "would mean that all kinds of plainly unmeritorious SLAPP suits could be brought to chill speech, yet still survive based only on an allegation of illegal conduct" and that "it

- 12 -

would create a conflict with the Federal Rules by allowing a complaint to be sustained pursuant to the illegal speech exception where that complaint would otherwise fail to state a claim upon which relief could be granted under the Federal Rule 12(b)(6) standard." Nader Br. at 31. However, as explained above, illegal conduct is not entitled to anti-SLAPP protection because it is not protected by the First Amendment. *Flatley*, 39 Cal. 4th at 316. This remains true even if the claims based on the illegal conduct are unmeritorious. Therefore, if a complaint sufficiently alleges illegal conduct, the defendant has two options: First, if the complaint's allegations of illegality are unfounded, the defendant can bring an anti-SLAPP motion challenging its factual sufficiency. Second, if the defendant merely contends that the causes of action are deficient notwithstanding plausible allegations of illegal conduct, then the defendant is free to file a Rule 12(b)(6) motion to dismiss. To hold otherwise would not promote constitutionally protected speech, rather, it would promote illegal speech by allowing a defendant to benefit from its illegal conduct, merely because the plaintiff's claims failed for technical reasons unrelated to the merits. Such an outcome does not serve the purpose behind California's anti-SLAPP statute.

Accordingly, the District Court committed reversible error by failing to consider at step two of the anti-SLAPP analysis whether Mosafer sufficiently alleged that Defendants engaged in illegal conduct.

## II. THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS DID NOT STATE A CLAIM FOR A VIOLATION OF THE UNLAWFUL PRONG OF THE UCL

The District Court also erred in finding that Mosafer had not stated a valid claim under the unlawful prong of the UCL. (1-ER-17, 16:13-14). "Virtually any law—federal, state or local—can serve as predicate for a UCL action." *Law Offices of Matthew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 553 (2013). Here, Mosafer sufficiently asserted a claim under the UCL's unlawfulness prong based on Defendants' FARA violations. *See, e.g.*, (3-ER-329-30, ¶ 101.b).

### A. The Complaint Sufficiently Alleged that Defendants' FARA Violations Harmed Mosafer

The Broidy Parties first argue that Mosafer lacks standing to bring its UCL claim because Mosafer did not sufficiently allege that it suffered an injury caused by their FARA violations. Brody Br. at 27-28. According to the Brody Parties, the Complaint fails to state a claim because the Disinformation Conspiracy was "based on alleged statements that said nothing about Mosafer or its product or services" and because it "did not even allege that any potential Mosafer customers saw the sole newspaper advertisement attributed to Broidy, let alone that they stopped doing business with Mosafer as a result." *Id.* at 28. The Broidy Parties are wrong.

Notwithstanding the Broidy Parties' myopic view of the Complaint, Mosafer's UCL claim is not solely based on one newspaper advertisement that

- 14 -

Broidy commissioned. Instead, Mosafer's claim is predicated on the *entire*
Disinformation Conspiracy that Defendants orchestrated on behalf of the UAE.
*See, e.g.*, (3-ER-328, ¶¶ 1, 60-65, 67, 80, 86-90; 101). The Complaint repeatedly
alleged that the Disinformation Conspiracy caused hundreds of millions of dollars
in damage to Mosafer. *See, e.g.*, (3-ER-327, ¶ 92) ("Customers canceled
reservations that they had with Mosafer as a direct result of the Disinformation
Conspiracy carried out by Defendants."); (3-ER-328, ¶ 97) ("[A]s a direct result of
the Disinformation Conspiracy, Mosafer not only lost existing and prospective
travel customers, including many in California, but its revenue declined
precipitously—by hundreds of millions of dollars on a global scale."); *see also,
e.g.*, (3-ER-306, 308, ¶¶ 4, 16). Moreover, Mosafer also linked these damages to
the FARA violations, alleging that the Disinformation Conspiracy was only
successful because the publications appeared legitimate, as opposed to being
disclosed as foreign propaganda. *See, e.g.*, (3-ER-321, 327, ¶¶ 71, 78, 87). These
allegations must be accepted as true. *See OSU Student All. v. Ray*, 699 F.3d 1053,
1061 (9th Cir. 2012) (citations omitted) ("In reviewing a dismissal under Rule
12(b)(6), we accept the well-pleaded factual allegations of the complaint as true
and construe them in the light most favorable to plaintiffs.").

Further, although the Broidy Parties insist that the Disinformation
Conspiracy did not harm Mosafer, this is a factual question that cannot be revolved

at this stage. *See Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253, n. 3 (9th Cir. 2022) ("This causation issue is quintessentially one for the jury and not for us to decide on appeal… In the same vein, we reject CitiMortgage's argument that Gross did not allege 'concrete harm' sufficient to satisfy Article III …."). At this juncture, it is at least plausible that a media blitz designed to harm Qatari-related businesses harmed Mosafer. Accordingly, Mosafer has sufficiently alleged it had standing to pursue its UCL claim against the Brody Parties.[4]

## B. The Complaint Sufficiently Alleged that Defendants' FARA Violations Arose from a Business Practice

Defendants also erroneously argue that Mosafer failed to state a claim for violation of the UCL because their failure to register under FARA was not a business practice, which is a prerequisite for the cause of action. Nader Br. at 32-34; Broidy Br. at 29. This argument is based on a misunderstanding of Mosafer's claim.

Mosafer's UCL claim is based on allegations that the UAE paid Defendants "hundreds of millions of dollars" to "spearhead[] a widespread disinformation campaign … which targeted Qatar and Qatari-American businesses" but that

---

[4] Similarly, Nader's argument that he could have violated FARA because he was not charged by prosecutors is probative of nothing. *See* Nader Br. at 40-41. Mosafer plausibly alleged that Nader violated FARA and these allegations are sufficient to survive a motion to dismiss.

despite receiving this money from the UAE, they failed to comply with FARA's registration and labeling requirements. *See, e.g.*, (3-ER-306-7, 317-18, ¶¶ 1, 3, 6-7, 56, 59-60).

Moreover, Mosafer alleged that as part of the Disinformation Conspiracy, Defendants hired other individuals and entities to make publications on behalf of the UAE in violation of FARA's the registration and disclosure requirements. *See, e.g.*, (3-ER-307, 319-27, ¶¶ 6, 61-62, 67, 71-79, 89, 101.b). Mosafer contends that Defendants are liable for these violations based on civil conspiracy and vicarious liability theories. *See* (2-ER-248-249) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) ("By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy . . . .") and *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1106 (2019) ("[A] principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the agency.")).

Accordingly, unlike Mosafer's false-advertising claims, Mosafer's claim under the unlawful prong of UCL is not focused on the content of the publications, but instead arises from Defendants' violations of FARA's reporting and labeling requirements when making those publications. Thus, Nader's claim that the District Court already found that his conduct was non-commercial is misplaced.

*See* Nader Br. at 34. The District Court only considered whether the *content* of the publications was non-commercial, not whether the act of making the publications on behalf of the UAE arose out of a business practice. Therefore, Nader's contention that Mosafer abandoned the issue by failing to address it in its Opening Brief is wrong. *See* Nader Br. at 34. Indeed, not only did the District Court not address the issue in its Order, the issue was not raised below in *any* of briefings—if anything, *Nader* abandoned the issue by not seeking to dismiss the UCL claim on this basis. *See* (2-ER-96-107; 144-178; 213-227; 266-301). Regardless, Mosafer's Opening Brief explains that the FARA violations were based on Defendants' receiving hundreds of millions of dollars from the UAE, and that is sufficient to avoid a finding of abandonment. *See* Op. Br. at 34-37.

### C. Mosafer's Claim under the Unlawful Prong of the UCL can be Based on a FARA Violations

Defendants also incorrectly argue that a claim under the unlawful prong of the UCL cannot be predicated on FARA violations.

First, Nader claims that a FARA violation cannot support a cause of action under the UCL because the UCL only applies to business practices, and commercial conduct is exempt from FARA. Nader Br. at 41-42 (citing *Meese v. Keene*, 481 U.S. 465, 478 (1987) ("[T]he Act's reporting and disclosure requirements are expressly conditioned upon a finding that speech on behalf of a

- 18 -

foreign principal has political or public-policy content.").  However, only those

who engage "in private and nonpolitical activities in furtherance of the bona fide

trade or commerce of such foreign principal" are exempt from FARA's

requirements.  22 U.S.C. § 611(d) (emphasis added).  FARA does not exempt

individuals, such as lobbyists, who engage in political speech as part of a business

practice.  *See, e.g.*, *Palestine Info. Off. v. Shultz*, 853 F.2d 932, 938 (D.C. Cir.

1988) ("FARA requires disclosure by lobbyists…").

Indeed, Nader concedes that FARA defines an "agent of a foreign principal"

as a person who "(i) engages . . . in political activities" or "(ii) acts within the

United States as a public relations counsel, publicity agent, information-service

employee or political consultant,"  22 U.S.C. § 611(c), which is precisely what

Mosafer has alleged—that Defendants were hired by the UAE to create political

propaganda.

Nor are Defendants correct in arguing that FARA cannot serve as a predicate

violation under the unlawful prong of the UCL because of an absolute bar to

private enforcement.  *See* Nader Br. at 36-40; Broidy Br. at 28-29.  Although a

plaintiff may not "plead around an absolute bar to relief simply by recasting the

cause of action as one for unfair competition … [t]his limit is rather narrow."

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)

(citing *Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.

4th 163, 182 (1999)).  Indeed, "[t]o forestall an action under [section 17200],

another provision must actually 'bar' the action or clearly permit the conduct."  *Id.*

Defendants do not cite any provision which explicitly bars private

enforcement of FARA.  Instead, they argue that a bar should be inferred from the

comprehensiveness of the remedial devices provided in the statute, *see* Broidy Br.

at 28-29; Nader Br. at 36-37, but that contention has been rejected by the

California Supreme Court.  *See Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 399

(2013) ("[T]he existence of a separate statutory enforcement scheme does not

preclude a parallel action under the UCL.").  Instead, there must be an <u>explicit bar</u>

<u>to relief</u>.  *See BBBB Bonding Corp. v. Caldwell*, 73 Cal. App. 5th 349 (2021)

("Subsequent cases applying *Cel-Tech* have explained that to the defendant must

show that a statute 'explicitly prohibit[s] liability for the defendant's acts or

omissions [citation] or 'expressly precludes an action based on the conduct.'")

(citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1379 (2012); *see*

*also Newton v. Am. Debt Servs., Inc.*, 2014 WL 806152, at *3 (N.D. Cal. Feb. 27,

2014) ("[M[ere silence as to a private right of action in the underlying statute may

not be enough, absent an affirmative intent, to preclude UCL liability.").

Nader's reliance on *Hartless* and *Almond Hill* is misplaced.  Nader cites to

*Hartless v. Clorox Co.*, 2007 WL 3245260, at *3 (S.D. Cal. Nov. 2, 2007) as an

example of a court finding that a plaintiff could not bring a claim under the UCL

for a violation of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") because "a private cause of action to enforce FIFRA has been expressly precluded by Congress." *Hartless*'s holding was based on *Almond Hill* where this Court held that a plaintiff could not bring a Section 1983 action based on a violation of FIFRA because "an intent to foreclose private remedies may be inferred if the remedial devices in the statute are sufficiently comprehensive to suggest exclusivity" and "FIFRA's enforcement scheme… is sufficiently comprehensive to foreclose private remedies under section 1983." *Almond Hill Sch. v. United States Dep't of Agric.*, 768 F.2d 1030, 1035 (9th Cir. 1985) (internal citation and quotation omitted).

However, in *Rose*, the California Supreme Court found that *Almond Hill*'s rationale does not apply to claims brought under the UCL. *See Rose*, 57 Cal. 4th at 398–99 (2013) (distinguishing *Almond Hill* because "the UCL, unlike 42 U.S.C. section 1983, is meant to provide remedies *cumulative* to those established by other laws, absent express provision to the contrary."). Moreover, as noted in *Rose*, in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447–448 (2005) the United States Supreme Court held that "state law requirements consistent with FIFRA are enforceable" and this "casts doubt on the validity of… [*Hartless*'s holding] that a UCL claim could not be premised on FIFRA violations because Congress had barred private enforcement actions." *Id.* at 398 n.7. Thus, Nader's reliance on

*Hartless* and *Almond Hill* is inappropriate and does not support their contention that FARA provides an absolute bar to private enforcement.

The other cases relied upon by Defendants fare no better. In *Ferrington v. McAfee, Inc.*, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010), the court found that the Federal Food Drug and Cosmetic Act ("FDCA") contained an absolute bar to relief because the statute explicitly provided that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States," *id.*, at *15, and in *Zhang v. Superior Court*, 57 Cal. 4th 364 (2013), the court found that a UCL claims could not be based on a violation Unfair Insurance Practices Act ("UIPA"). *Id.* at 384. However, FARA, unlike the FDCPA and UIPA, does not provide that enforcement can only be brought by the United States, nor does it otherwise suggest an absolute bar to private enforcement. *See, e.g.*, *Newton v. Am. Debt Servs., Inc.*, 2014 WL 806152, at *3 (N.D. Cal. Feb. 27, 2014) (finding that the Calif. Fin. Code § 12307 "unlike the UIPA in *Zhang*, does not absolutely bar private enforcement for the alleged conduct" because the law "is permissive—granting enforcement power to the Commissioner" but "does not contain a stated intent to occupy the field" and there is "no provision… [which] explicitly prohibits private action generally.").

Finally, Nader's policy argument that "allowing private litigants to enforce national security and foreign relations statutes would lead to chaos" is both

- 22 -

hyperbolic and incorrect. Nader Br. at 39. Permitting a UCL claim based on a

FARA violation would not allow a private litigation to enforce a national security

statute because "a UCL action does not 'enforce' the law on which a claim of

unlawful business practice is based." *Rose*, 57 Cal. 4th at 396. Instead, the UCL

"provides its own distinct and limited equitable remedies for unlawful business

practices, using other laws only to define what is 'unlawful.'" *Id.*

Accordingly, Mosafer properly asserted its claim under the unlawful prong

of the UCL based on FARA violations and the District Court erred in dismissing

this cause of action.

## III. THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS FAILED TO STATE A CLAIM BECAUSE PLAINTIFFS ALLEGED HARM INTENTIONALLY CAUSED BY KNOWINGLY MAKING FALSE STATEMENTS

### A. Mosafer Alleged a Valid Injurious Falsehood Claim

While Mosafer's claim was labeled as a cause of action for trade libel, the

District Court erred in failing to consider Mosafer's argument that the Complaint

stated a valid claim, in substance, for the broader tort of injurious falsehood. *See*

Op. Br. at 51-57. While not expressly pled as a claim of injurious falsehood, trade

libel is an application of the more general prohibition against injurious falsehood.

*See Hartford Casualty Ins. Co. v. Swift Distr., Inc.*, 59 Cal. 4th 277, 289 (2014);

*see also Polygram Recs., Inc. v. Superior Ct.*, 170 Cal. App. 3d 543, 548 (1985);

Rest. 2d Torts § 623A.

Contrary to the Broidy Parties' contention, the Court may consider whether Mosafer stated a claim for injurious falsehood despite the fact that Mosafer only raised the issue in its Opposition to Nader's motion. *See* Broidy Br. at 31-32; *see* (2-ER-138, 21:3-4 & n.10). The Broidy Parties were not prejudiced by the omission because they had a full and fair opportunity to seek to file a supplemental brief in the District Court or to address the issue at the oral argument. *See United States v. Kirilyuk*, 29 F.4th 1128, 1136 (9th Cir. 2022) ("[B]oth parties had ample opportunity to address this question in supplemental briefing and so we see no prejudice to the government."); *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 619 n. 4 (9th Cir. 2006) (considering an issue not raised in an opening brief where an opponent had an opportunity to address the issue at oral argument). Moreover, the Broidy Parties were able to address this purely legal argument in their answering brief. Accordingly, the Court should exercise its discretion to consider whether Mosafer stated a claim against the Broidy Parties for injurious falsehood. *See Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886 (9th Cir. 2003) ("[W]e may consider an issue regardless of waiver if the issue is purely one of law and the opposing party will suffer no prejudice."); *Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1241 (9th Cir. 2001) (noting that the Court may "review a purely legal issue… that is made for the first

time on appeal unless the other party would be prejudiced by the failure to raise the issue at the district court.").

Defendants' challenge to the merits of Mosafer's arguments also fail. According to Defendants, Mosafer failed to state a claim for injurious falsehood fails because the Complaint failed to allege that there was a statement that specifically referred to Mosafer. *See* Broidy Br. at 32; Nader Br. at 43-44. However, a claim for injurious falsehood does not have the same elements as a claim for trade libel because trade libel is a more specific application of the broader tort of injurious falsehood. *See Polygram*, 170 Cal. App. 3d at 548 ("[W]hat is commonly called "trade libel" is a particular form of the tort of injurious falsehood…"); *Hartford*, 59 Cal. 4th at 289 ("Disparagement is often included now as "a specific example of the more general principle of injurious falsehood.").

Although courts have found that some specific applications of the tort of injurious falsehood (*i.e.*, trade libel or commercial disparagement) must be "of and concerning" the plaintiff, a claim for injurious falsehood only requires allegations of: (1) publication of a false statement that (2) causes pecuniary harm to another with (3) the intent to cause harm and (4) knowledge that the statement is false. *See*

- 25 -

Restatement 2d Torts sections 623A.[5]  None of these elements require a statement that specifically referred to Mosafer, and because Mosafer sufficiently alleged each of the elements set forth by the Restatement, the District Court erred in dismissing Mosafer's claim.

Finally, Defendants argue that Mosafer did not sufficiently establish that the publications made about Qatar were knowingly false.  Nader Br. at 48; Broidy Br. at 33 n. 13.  However, whether the statements were false is a factual question that is inappropriate to decide at the pleadings stage.  *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("[W]hether a practice is deceptive will usually be a question of fact not appropriate for . . . motions to dismiss.").  Thus, it is sufficient to survive a motion to dismiss that Mosafer alleged that the publications were false.  *See, e.g.*, (3-ER-307, ¶ 7) ("[T]heir campaign employed conventional print media, internet websites, and social media accounts to publish false and misleading information regarding the safety, stability, and nature of Qatar and Qatari-based businesses.").

---

[5] The Restatement's definition has been adopted by California Courts.  *See* Op. Br. at 54 (citing *Hartford*, 59 Cal. 4th at 289-90; *Polygram Records*, 170 Cal. App. 3d at 548-49; *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1360 (1998)).

**B.      The Statute of Limitations Does Not Bar Mosafer's Injurious Falsehood Claim**

**1.      The Statute of Limitations was Tolled by the Discovery Rule**

Under the discovery rule, the statute of limitations does not begin to run until "'the plaintiff suspects or should suspect that her injury *was caused by wrongdoing*[.]'" *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994) (citing *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (1988)) (emphasis in original); *see also* Op. Br. at 58.

According to the Broidy Parties, Mosafer's cause of action for injurious falsehood began to accrue in mid-2017 when Mosafer first became aware of their injuries. Broidy Br. at 34. However, mere knowledge of injury is not enough because it "does not necessarily imply that any wrongdoing has occurred or that anyone is to blame." *Id.* (citations omitted). This is particularly true here because Mosafer's injurious falsehood claim requires not only publication of false statements, but also an intent to harm the plaintiff with such statements.

Defendants also argue that Mosafer had constructive knowledge of the wrongdoing since April 2018 based on media reports. Nader Br. at 51; Broidy Br. at 35-36. However, as explained in Mosafer's Opening Brief, "knowledge of widespread coverage cannot be imputed" to plaintiffs. *Unruh-Haxton v. Regents of Univ. of California,* 162 Cal. App. 4th 343, 356 (2008); *see also Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal. App. 4th 1202, 1205-07 (2006) (the statute of

limitations, "'does not begin to run when some members of the public have a suspicion of wrongdoing, but only 'once the plaintiff *has* a suspicion of wrongdoing.'") (quoting *Jolly,* 44 Cal. 3d at 1111)).

Nader's reliance on *Von Saher* is misplaced. *See* Nader Br. at 51. There, the Court did not rule that a plaintiff should be deemed to be on notice of media articles, rather, the Court explained that a plaintiff is deemed to have constructive notice of its claims when it reasonably could have discovered them. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). However, whether a reasonable person would have been aware of the Disinformation Conspiracy based on the media articles is a factual question that cannot be determined at this stage. *See, e.g.*, *In re Swine Flu Prod. Liab. Litig.*, 764 F.2d 637, 641 (9th Cir. 1985) ("Additional fact-finding is necessary to determine whether the general community awareness was sufficient to find that [plaintiff] should reasonably have known of the cause of his wife's death.").

Because Defendants cannot demonstrate "beyond a doubt" that Mosafer knew, or should have known, of Defendants' wrongdoing, the District Court erred in finding that Mosafer's claim was time-barred. *See Syed v. M-I, LLC*, 853 F.3d 492, 507 (9th Cir. 2017) ("[A] complaint cannot be dismissed [for untimeliness] unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").

- 28 -

**2. Defendants' Fraudulent Concealment Tolled the Statute of Limitations**

Defendants' fraudulent concealment of their role in the Disinformation

Conspiracy also tolled the statute of limitations. *See Bernson v. Browning-Ferris*

*Indus.*, 7 Cal. 4th 926, 932 (1994) ("[A] defendant may be equitably estopped from

asserting the statute of limitations when, as the result of intentional concealment,

the plaintiff is unable to discover the defendant's actual identity.").

The Broidy Parties erroneously argue that Mosafer did not sufficiently allege

that their conduct prevented Mosafer from filing their suit against them. Broidy

Br. at 35. Similarly, Nader argues the doctrine is inapplicable because Mosafer

"'had available all the facts necessary to discover her cause of action with due

diligence.'" Nader Br. at 55 (citing *Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir.

1996)). These contentions are baseless. Mosafer alleged that Defendants

fraudulently concealed their role in the Disinformation Conspiracy and that the

publications were designed to look independent, legitimate, and authentic so that

the public would not recognize that they were part of a coordinated campaign

against Qatar. *See* (3-ER-307, 315, 321-24, 327, 329-30, ¶¶ 6, 44, 71-75, 77-79,

87, 91, 101.b). By concealing both the existence of, and their involvement in, the

Disinformation Conspiracy, Mosafer was not able to bring a lawsuit against

Defendants within two years of its injuries and thus the fraudulent concealment

doctrine tolled the statute of limitations.

**<u>CONCLUSION</u>**

For the reasons stated herein, the order granting Defendants' anti-SLAPP motions should be reversed in its entirety and Mosafer's claims for violation of the unlawful prong of the UCL and injurious falsehood should be reinstated.

## **ANSWERING BRIEF OF CROSS-APPELLEES**

## **INTRODUCTION**

The Broidy Parties' Opening Brief recycles the same unpersuasive arguments made before the District Court and asserts baseless criticisms of the District Court's dismissal. The Broidy Parties' Counterclaims against Plaintiffs and Counter-Defendants Abu Issa Holding WLL, Ashraf Abu Issa, and Nabil Abu Issa (collectively, the "Mosafer Parties") are another example of the Broidy Parties' eagerness to injure innocent companies like Mosafer as part of their crusade against Qatar.[6] As such, the District Court's dismissal of the Broidy Parties' Counterclaims should be affirmed.

## **I. THE DISTRICT COURT PROPERLY STRUCK THE BROIDY PARTIES' COUNTERCLAIM FOR ABUSE OF PROCESS**

The District Court properly dismissed the Broidy Parties' Counterclaim for Abuse of Process under both an anti-SLAPP analysis and under Rule 12(b)(6) of the FRCP. As the District Court appreciated, the Abuse of Process Counterclaim lacks any colorable basis and is merely a frivolous intimidation attempt.

---

[6] Indeed, these Counterclaims represent Broidy's *fifth* successive lawsuit in federal court asserting the same deficient claims against Qatar and alleged Qatari agents. *See Broidy Capital Mgmt., LLC v. Qatar*, No. 2:18-cv-02421-JFW-E (C.D. Cal. Mar. 26, 2018); *Broidy Capital Mgmt., LLC v. Muzin*, No. 1:19-cv-00150-DLF (D.D.C. Jan. 24, 2019); *Broidy Capital Mgmt., LLC v. Benomar*, No. 7:18-cv-06615-CS (S.D.N.Y. July 23, 2018); *Broidy v. Global Risk Advisors LLC*, No. 1:19-cv-11861-MKV (S.D.N.Y. Dec. 27, 2019).

### A. The Conduct Alleged in the Abuse of Process Counterclaim Is Constitutionally Protected Speech

The District Court properly held that the first prong inquiry of the anti-SLAPP analysis supported dismissal of the Broidy Parties' Counterclaim because the allegations arise from and rest solely on Plaintiffs' protected right to petition. *JSJ Ltd. P'ship v. Mehrban*, 205 Cal. App. 4th 1512 1521 (2012) ("Filing a lawsuit is an act in furtherance of the constitutional right of petition, regardless of whether it has merit."); *see also* (1-ER-24:20-21) ("[T]he abuse of process at the heart of the Broidy Parties' claim is the filing of the Complaint."). The Broidy Parties attempt to overcome this result by arguing that the anti-SLAPP statute does not apply because some of the Mosafer Parties are foreign citizens whose alleged acts occurred outside of the United States, Broidy Br. at 37, and that the Abuse of Process Counterclaim is based in part on the use of information obtained in discovery. *Id.* at 38-39. These arguments fail.

First, Plaintiffs Mosafer Inc. and Mosafer E-Com are domestic companies, which indisputably have constitutional rights protected by the anti-SLAPP statute, *see* [FER-9, 6:6-8]. Moreover, as the District Court noted, "*even if* the parties invoking the authority of the Court were foreign citizens[,]" the filing of Plaintiffs' Complaint (*i.e.*, the protected activity) "**occurred within the territory of the United States**[.]" (1-ER-25:1-4) (emphasis added). The Broidy Parties overlook this critical distinction. Although it is "long settled as a matter of American

- 32 -

constitutional law that foreign citizens *outside* U.S. territory do not possess rights under the U. S. Constitution[,]" *Agency for Int'l Dev. v. All for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020) (emphasis added), foreign citizens *in the United States* may enjoy certain constitutional rights. *Id.* (collecting cases). Here, the Mosafer Parties' protected activity, the filing of a lawsuit in the Central District of California, took place in the United States and there is no allegation that any of the Mosafer Parties engaged in conduct outside of the United States.

Second, the Broidy Parties argue that the Abuse of Process Counterclaim entails more than the mere filing of Plaintiffs' lawsuit, alleging that the Mosafer Parties participated in a conspiracy to engage in "lawfare" against Qatar's critics. *See* Broidy Br. at 38. Setting aside the hyperbole, the only allegations against the Mosafer Parties are that they (1) purportedly obtained non-public information from Qatar, (2) used this information to file a lawsuit, and (3) issued a press-release about the lawsuit. *Id.* at 39. Of these three allegations, the only use of "process" was the filing of the Complaint, and thus this is the only relevant conduct. *See Smith v. Wolf*, 2021 WL 856996, at *3 (S.D. Cal. Mar. 8, 2021) (Abuse of Process "must involve a misuse of the court's power, or 'an act done under the authority of the court for the purpose of perpetrating an injustice'" (citing *Younger v. Solomon*, 38 Cal. App. 3d 289, 297 (1974)). The Broidy Parties' additional allegations are mere window-dressing because, as the Broidy Parties themselves concede, "the

constitutional right of petition encompasses 'the basic act of filing litigation.'"
Broidy Br. at 39 (quoting *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.
4th 1106, 1115 (1999)).  Moreover, all of the alleged conduct against the Mosafer
Parties is covered by the anti-SLAPP statute because "but for the federal lawsuit
and [the Mosafer Parties'] alleged actions taken in connection with that litigation,
[the Broidy Parties'] present claims would have no basis."  *Navellier*, 29 Cal. 4th at
90 (emphasis added).

Finally, even if the anti-SLAPP statute did not extend to the foreign
Counter-Defendants, the District Court's decision to dismiss the Abuse of Process
Counterclaim under Rule 12(b)(6) was proper because the Broidy Parties failed to
state a claim for Abuse of Process.  *See* (1-ER-27:3 n.13).

### B.     The Broidy Parties Did Not Satisfy Their Burden of Showing They Were Likely to Prevail on Their Abuse of Process Claim

The District Court properly found that the Broidy Parties could not
demonstrate a probability of prevailing on the merits under step two of the anti-
SLAPP analysis because they failed to state a claim for Abuse of Process under
Rule 12(b)(6) of the FRCP.[7]  *See id.*

---

[7] Where, as here, "an anti-SLAPP motion to strike challenges
only the legal sufficiency of a claim, a district court should apply the [FRCP]
12(b)(6) standard and consider whether a claim is properly stated."  *Planned
Parenthood*, 890 F.3d at 834.  Thus, failure to demonstrate a likelihood of
prevailing on the merits under the second prong of the anti-SLAPP analysis is akin
to a Rule 12(b)(6) analysis.

Here, the Broidy Parties' Abuse of Process Counterclaim is based entirely on Mosafer filing its lawsuit against them. As such, the cause of action fails because it is barred by the absolute litigation privilege and because as a matter of law, the mere act of filing a lawsuit cannot be the basis for an abuse of process claim.

### 1. The Broidy Parties' Abuse of Process Claim Is Barred by the Absolute Litigation Privilege

The Broidy Parties' argument that the litigation privilege is inapplicable is a transparent attempt to frustrate the well-settled precedent that the filing of a complaint cannot give rise to liability for abuse of process because under California law.

"[C]ommunications with some relation to judicial proceedings are **absolutely immune** from tort liability by the litigation privilege." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (internal quotations and citations omitted; emphasis added); *see also* Cal. Civ. Code, § 47(b). The litigation privilege is intended to afford litigants "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). "To accomplish these objectives, the privilege is 'an 'absolute' privilege, and it bars **all tort causes of action** except a claim of malicious prosecution.'" *Flatley*, 39 Cal. 4th at 322 (emphasis added) (quoting *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 360 (2004)); *see also Olsen v.*

*Harbison*, 191 Cal. App. 4th 325, 333 (2010) ("The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution.").

The Broidy Parties claim that the District Court erred in applying the litigation privilege because "California courts decline to apply the litigation privilege when the underlying policies – including "promot[ing] access to the courts, truthful testimony or zealous advocacy" – are not furthered." Broidy Br. at 41 (quoting *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1494 (2005). However, the California Supreme Court has explicitly rejected this argument, finding that the privilege applies even to abuse of process claims involving false testimony. *See Silberg*, 50 Cal. 3d at 218 (noting that "a rule that an otherwise privileged communication is not privileged under section 47(2) unless made for the purpose of promoting the 'interest of justice' is wholly inconsistent with the numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged" and that "such a test would also be contrary to the decisions in which liability for abuse of process is held precluded by the privilege" because "[o]ne of the two necessary elements of that tort is an ulterior purpose."); *see also Rusheen*, 37 Cal. 4th at 1058 ("The privilege has been applied specifically in the

context of abuse of process claims alleging the filing of false or perjurious testimony or declarations.").

Moreover, the Broidy Parties' argument misrepresents a court's ability to decline to apply the privilege. Namely, the litigation privilege is not qualified, it is absolute. *See Flatley*, 39 Cal. 4th at 322. Accordingly, it is well-settled that the privilege protects a statement made in the course of litigation *even if* "the statement was false and made with malice." *Cox v. Griffin*, 34 Cal. App. 5th 440, 448 (2019). The Broidy Parties fail to provide any justification for deviating from the well-established application of the privilege and cite only inapposite cases: *Vivian v. Labrucherie*, 214 Cal. App. 4th 267, 277-78 (2013), actually *applied* the litigation privilege to bar a breach of contract action and *Wentland* only limited the privilege's applicability to "one who validly contracts not to speak," which the Mosafer Parties never did.

Similarly, the Broidy Parties argue without support that the litigation privilege is only applicable to litigation "contemplated in good faith." Broidy Br. at 43 (quoting *Herzog v. "A" Co.*, 138 Cal. App. 3d 656, 660-61 (1982)). However, this argument completely misses the mark. *See also* [FER-7-8, 4:20-5:9]. *Herzog* did not consider whether the litigation privilege may be rebutted by evidence that the litigation was brought in bad faith. Instead, *Herzog* only considered whether the privilege may be applied to a letter threatening litigation

- 37 -

(in the absence of any actual litigation), and it held that the litigation privilege extends to such communications only if litigation was contemplated in good faith at the time of the communication. *Id.* at 60-62. *Herzog* does not provide any basis for contesting the application of the litigation privilege to a claim that depends on the actual filing of litigation. To the contrary, the Supreme Court subsequently held that "where the gravamen of the complaint is a privileged communication"— such as the filing of a lawsuit—"the privilege extends to necessarily related" conduct, and this privilege "is absolute and applies regardless of malice." *Rusheen*, 37 Cal. 4th at 1062; *see also Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1269-70 (2008) (declining to extend *Herzog* and granting anti-SLAPP motion based on litigation privilege).

Finally, the Broidy Parties argue that the District Court "misconstrue[ed]" the Abuse of Process Counterclaim as constituting the single act of filing a lawsuit, as opposed to a "tortious and fraudulent scheme." Broidy Br. at 42. However, the District Court did not overlook this argument—it explicitly and rightfully rejected them. The District Court held that "even if [it] were to consider the alternate theory of liability presented by the Broidy Parties' brief, the Broidy Parties fail to identify *any* process or unprivileged act using process that could be subject to the claim." *See* (1-ER-26:26-27-1). This finding was appropriate because the Broidy Parties did not articulate in their pleadings nor in oral argument any other "misuse

of the court's power, or an act done under the authority of the court for the purpose of perpetrating an injustice." *See Smith v. Wolf*, 2021 WL 856996, at *3 (S.D. Cal. Mar. 8, 2021) (internal quotations and citation omitted).

### 2. The Broidy Parties Have Not Sufficiently Stated a Claim for Abuse of Process

Even if the litigation privilege did not bar the Broidy Parties' Abuse of Process claim (and it does), the claim still must be dismissed because the Broidy Parties have not stated a valid claim. To "establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner." *Coleman v. Gulf Ins. Grp.*, 41 Cal. 3d 782, 792 (1986); *see also DaVinci Aircraft, Inc. v. U.S.*, 926 F.3d 1117, 1123 (9th Cir. 2019).

### a. The Broidy Parties have not alleged that the Mosafer Parties committed a wrongful act using process

The Broidy Parties' Abuse of Process claim fails because they have not established a wrongful act using "process." As noted above, Abuse of Process "must involve a misuse of the court's power, or 'an act done under the authority of the court for the purpose of perpetrating an injustice.'" *Smith*, 2021 WL 856996, at *3 (citing *Younger*, 38 Cal. App. 3d at 297). The Broidy Parties rely on a footnote in *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d. 94 (1972) to argue that "process" encompasses an "entire range of 'procedures' incident to litigation."

Broidy Br. at 45.  However, *Barquis* clarified that the term process was limited to "improper uses of the judicial machinery." *Id.*

Here, the only conduct that the Mosafer Parties are alleged to have "done under authority of the court" or using "judicial machinery" is the filing of the Complaint, which is insufficient.  *See Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994) ("[T]he mere filing or maintenance of a lawsuit— even if for an improper purpose—is not a proper basis for an abuse of process action.").  The California Supreme Court has explained that its "concern with protecting free access to the courts has … led [it] to refuse to expand the tort of abuse of process to include the alleged improper filing of a lawsuit." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1133 (1990) (citing *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1170 1986)).  This is because "if the filing of a[n] action for an improper ulterior purpose were sufficient to state a claim[,]" then the "established balance between the interest in being free from unjustified litigation and the interest in free access to the courts" would be upset. *Id.*

Although the Broidy Parties' rely on *Barquis* for the proposition that the filing of a Complaint can support an abuse of process claim, it is "no longer good law because it preceded the California Supreme Court's decision in *Oren* . . . which held that filing or maintaining a lawsuit, even for improper reasons, cannot

provide the basis of an abuse of process claim." *Owens v. Chasko*, 2011 WL 3163261, at *7 (E.D. Cal. July 26, 2011); *see also Rusheen*, 37 Cal. 4th at 1059 (noting older cases did not address the applicability of the litigation privilege and later cases had narrowed the tort's reach).

Perhaps recognizing that filing a Complaint cannot constitute a "wrongful act," the Broidy Parties' claim that the Mosafer Parties "engaged in numerous willful and improper acts" beyond the filing of the Complaint.  Broidy Br. at 45-46.  Despite this contention, the Broidy Parties failed to identify any other misuse of process by the Mosafer Parties.  For instance, the Broidy Parties argue that the Mosafer Parties improperly engaged in a "media blitz" by issuing press releases, but that does not involve the use of "process."  *See* Broidy Br. at 46.

Indeed, the only other use of process mentioned in the Counterclaims are "precursor *Doe* lawsuits targeted at unmasking its anonymous critics."  *Id.* However, the Broidy Parties do not (and cannot) allege that they, nor the Mosafer Parties, had any involvement in the 2018 *Doe* actions.  To underscore, the Mosafer Parties are not alleged to be involved in the *Doe* lawsuits and the Broidy Parties were not implicated in the *Doe* actions *in any way*.  *See* (SER-121-22, ¶ 49) (alleging that the Qatar initiated the *Doe* actions to obtain information which identified Ironistic, SCL Social Limited, Project Associates, and Atkinson).  As such, the Broidy Parties are merely alleging that the Mosafer Parties used

- 41 -

information obtained through Qatar's use of "process," not that the Mosafer Parties themselves used "process" to obtain any information.

At bottom, the Broidy Parties are seeking to hold the Mosafer Parties liable for Qatar's conduct. However, even accepting the Broidy Parties' conclusory allegations that Mosafer acted as Qatar's agent (it did not), *see* Broidy Br. at 9, 18; *see also* (SER-121-22, ¶ 65), the Broidy Parties cannot rebut the normal rule that agents are not liable for the torts of their principals. *Kurtin v. Elieff*, 155 Cal. Rptr. 3d 573, 593 (Cal. Ct. App. 2013), *as modified on denial of reh'g* (May 8, 2013); *see also Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019) (dismissing claims against agent and holding that "in contrast to the vicarious liability of principals, agents are not vicariously liable for the torts of their principals") (internal quotations omitted).

Moreover, setting aside the question of agency and the fact that the Broidy Parties were not implicated in the *Doe* actions, the Broidy Parties have also failed to allege how "Qatar providing to Mosafer the nonpublic information that it obtained from subpoenas in its *Doe* lawsuits identifying the emirate's American critics" was wrongful in any way. Broidy Br. at 39. Even when pressed by the District Court, the Broidy Parties were unable to articulate *any* reason why it would be improper for Qatar to share information learned in the *Doe* subpoenas with the Mosafer Parties (*i.e.*, such as where a deposition is designated confidential

or otherwise subject to a protective order). *See* (SER-13:17-14:20); *see also* (SER-20:14-21:13).

Accordingly, the Broidy Parties' Abuse of Process claim fails because they have not sufficiently alleged that the Mosafer Parties engaged in a wrongful act using "process."

> **b.** **The Broidy Parties have not established that the Mosafer Parties entertained an ulterior motive in using process**

The Broidy Parties' Abuse of Process Counterclaim also fails because they have not established an "ulterior motive" sufficient to meet their burden. "Generally, an action for abuse of process lies only where the process is used to obtain an unjustifiable collateral advantage. For this reason, mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort." *Younger*, 38 Cal. App. 3d at 297.

> [T]here is no liability when the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion . . . such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort.

*Spellens v. Spellens*, 49 Cal. 2d 210, 232-33 (1957); *see also Guillory v. WFS Fin., Inc.*, 2007 WL 879017, at *6 (N.D. Cal. Mar. 21, 2007) (dismissing abuse of process claim because plaintiff "does not allege any facts to support her conclusory

allegations" that defendant filed a complaint "for purposes of extortion or retaliation" and "employing a procedure outlined by the law cannot alone amount to an abuse of process") (citation omitted).

Here, the Broidy Parties fail to allege that *any* unjustifiable collateral advantage was obtained through the filing of Plaintiffs' lawsuit. *See* (SER-167, ¶ 249). To the contrary, the Broidy Parties argue that the Mosafer Parties' purpose was to strip them of their "First Amendment rights to free speech" (which a Complaint cannot do) and to "retaliate" against them for criticizing Qatar. Broidy Br. at 45. However, these claims merely accuse the Mosafer Parties of seeking the relief sought in the Complaint—an injunction and compensatory damages—hardly an unjustifiable collateral advantage via extortion or coercion. Moreover, to the extent the Broidy Parties claim that the purported "retaliation" extended beyond seeking damages, they fail to explain how the alleged retaliation was distinct from mere "vexation or harassment." *SuperGuide Corp. v. Gemstar Dev. Corp.*, 2010 WL 11463159, at *11 (C.D. Cal. June 3, 2010); *see also* (SER-169, ¶ 261) (accusing the Mosafer Parties of filing "a frivolous lawsuit against the Broidy Parties to continue to defame and *harass* Broidy") (emphasis added).

Finally, even if the Broidy Parties had identified a sufficient improper purpose (and they have not), their allegations that the Mosafer Parties filed their action with an improper purpose are conclusory and inadequate. *See, e.g.*,

*SuperGuide*, 2010 WL 11463159 at *11–12 (dismissing complaint because allegations that defendant "was intentionally using these legal processes to cause harm to and damage Superguide, and not for any legitimate purpose" were "conclusory" and "wholly inadequate").

Accordingly, the Broidy Parties' Abuse of Process claim also fails because they have not sufficiently alleged that the Mosafer Parties entertained an ulterior motive in its use process.

## II. THE DISTRICT COURT PROPERLY STRUCK THE BROIDY PARTIES' COUNTERCLAIM FOR BUSINESS CONSPIRACY

In addition to baselessly accusing the Mosafer Parties of Abuse of Process for the mere act of filing a lawsuit, the Broidy Parties also added two equally baseless counts of *conspiring* to file a lawsuit. In what can only be described as retaliation against the Mosafer Parties, the Broidy Parties grasped at an application of Virginia law when they could not identify a claim under California law. Virginia law, however, does not apply to the Counterclaims because California law applies to conduct that took place entirely in California. Accordingly, the Counterclaim for business conspiracy fails as a matter of law. Moreover, even if Virginia law were applicable, the Broidy Parties still failed to adequately plead their business conspiracy.

### A.    Virginia Law Does Not Apply to the Broidy Parties' Counterclaims

As the District Court held, the Broidy Parties' "business conspiracy claim under Virginia law… fails because Virginia law does not apply here."  (1-ER-24, 23:5-6).  Preliminarily, while the Broidy Parties' Virginia business conspiracy claim was originally brought on behalf of all three Counter-Complainants, the Broidy Parties now concede that Broidy and BCM do not have a cognizable claim under Virginia law.  *Compare* (SER-98, 17:17-21) *with* Broidy Br. at 47 ("At least as to Circinus, the District Court erred in finding that Virginia law did not apply and dismissing that counterclaim.").  Thus, the parties are in agreement: Broidy and BCM's business conspiracy claims were properly dismissed.

As for Circinus, the Broidy Parties contend, as they did below, that because it is incorporated and has its principal place of business in Virginia, Virginia law should apply to its claim filed in California about conduct in California.  The parties agree that California's choice-of-law rules apply.  *See* (1-ER-24, 23:6-7) ("A federal district court applies the choice-of-law rules of the states in which it sits.").  California applies a "three-step governmental interest test," under which the court (1) "determines whether the relevant law of each of the potential affected jurisdictions with regard to the particular issue in question is the same or different," (2) "examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true

- 46 -

conflict exists," and (3) "carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired of its policy were subordinated to the policy of the other state." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928-29 (9th Cir. 2019) (*quoting Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 107-08 (2006)). The party seeking to apply a foreign state's law bears the burden of proving a conflict. *Id*. Here, the Broidy Parties have failed to demonstrate that "each prong of that test supports application of Virginia law" for Circinus' claim. Broidy Br. at 47.

First, the District Court "assume[d] *arguendo* that the relevant laws of Virginia and California are in conflict." *See* (1-ER-25, 24:1-2). On appeal, the Broidy Parties fail to meet their burden that the Court's assumption was correct or to otherwise demonstrate that Virginia's business conspiracy Counterclaim conflicts with California law. The Broidy Parties simply cite to the relevant Virginia statute and note that "unlike California law, a Virginia statute provides for an independent cause of action for business conspiracy." However, because California allows claims to "rely on a theory of civil conspiracy liability," *see, e.g.*, *Ajzenman v. Office of Commissioner of Baseball*, 487 F.Supp.3d 861, 867 (C.D. Cal. 2020), any conflict claimed by the Broidy Parties is manufactured; both Virginia and California prohibit parties from conspiring to abuse process. *See T.P.*

- 47 -

*v. Walt Disney Parks & Resorts U.S., Inc.*, 2021 WL 3598574, at *3 n.4 (C.D. Cal. Apr. 20, 2021) ("Because there is no conflict between Florida law and California law for breach of contract, the Court applies California law.").

Second, the Broidy Parties claim in a conclusory fashion that "the dramatically different approaches that the two states' courts and legislatures have taken to protecting businesses against conspiracy show that Virginia's interest in applying its law clearly outweighs California's." Broidy Br. at 48. However, California recognizes a theory of conspiracy liability. *Ajzenman*, 487 F. Supp. 3d at 867. It is the Broidy Parties' burden to demonstrate how Virginia's statute represents a "dramatically different approach" as they claim, and they fail to do so where, as here, both states recognize liability for conspiring to commit a tort. In any event, the Broidy Parties' abuse of process claim is brought under California law, which indicates that California law *does* protect businesses from conspiracies such as those concocted by the Broidy Parties.

Third, as the District Court found, "California has a predominant interest in Circinus' claim" because "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders." *See* (1-ER-25, 24:5-6) (*quoting Senne*, 934 F.3d at 934 (9th Cir. 2019)). The Broidy Parties cite no case law for its contention that the District Court's determination was an "error," Broidy Br. at 48, nor could they. Indeed, the futility of the Broidy Parties' argument is underscored

- 48 -

by the citation to only one case in the entirety of their Opening Brief's application of California's choice-of-law test—a citation which is unavailing for their position as the case applied California law to the calculation of damages for a wrongful death action relating to a car accident in California. *See Hurtado v. Superior Court*, 11 Cal.3d 574, 581-82 (1974) ("In the case at bench, California as the forum should apply its own measure of damages for wrongful death… Mexico has no interest whatsoever in the application of its limitation of damages rule to the instant case"); *see also* Broidy Br. at 48. The entirety of the alleged harm identified in the Counterclaims occurred in California, and the Broidy Parties cannot avoid this black-letter law. *See Hernandez v. Burger*, 102 Cal.App.3d 795, 802 (1980) ("With respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."); *see also In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1067 (S.D. Cal. 2017) ("[B]oth California courts and the Ninth Circuit have held that 'the place of the wrong' has the predominant interest in regulating the conduct at issue."). Moreover, because the underlying tort to the conspiracy claim is a California abuse of process claim, it makes no sense to apply Virginia law.

Further, as the District Court noted, "Virginia's own choice-of-law rule suggests the commonwealth lacks any substantial interest in applying its tort law to acts damaging Virginia citizens that occur outside its borders." (1-ER-25, 24:12-

- 49 -

14) (citing *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (2006)).

Because Virginia would not apply its own law to wrongful acts occurring against

Virginia citizens in California, as the Broidy Parties ask of the Court, Circinus is

not stripped of any rights by the application of California law.  The Broidy Parties

call the District Court's "reliance on Virginia's choice-of-law rules…misguided"

but do not cite any case law that explains why, and instead just repeat their citation

to the business conspiracy statute.  Broidy Br. at 48-49.

Because every step under the choice-of-law analysis supports the application

of California law, the Broidy Parties' business conspiracy claim under Virginia law

was properly dismissed.

### B.    The Broidy Parties Fail to State a Claim for Business Conspiracy

As the District Court recognized, "[e]ven if Virginia law applied, the claim

would fail."  (1-ER-25, 24:22).  Before the District Court, the Broidy Parties

argued that "Virginia law *does not* require . . . that the pleading party sufficiently

allege a separate actionable tort" as part of a business conspiracy claim."  (SER -

101 at 20:10-11) (emphasis in original, quotations, citations and ellipses omitted).

However, now that the District Court has held that "[a] business conspiracy claim

requires a predicate unlawful act or violation of a legally protected interest," (1-

ER-25, 24:22-25:1), the Broidy Parties concede that if the Abuse of Process

Counterclaim fails, so too does the Virginia business conspiracy claim.  *See* Broidy

Br. at 49-50 (resting adequacy of pleading of business conspiracy claim on pleading of Abuse of Process claim). For the reasons discussed herein, in Section I, *supra*, the Broidy Parties' Abuse of Process claim fails; that alone is reason enough to affirm dismissal of their business conspiracy claim.

Moreover, while the District Court determined two independent grounds (applicability of choice of law, discussed above, and the separate tort requirement) were enough to dismiss the business conspiracy claim, there are other reasons why dismissal of the claim was proper. (FER-42-46 at p. 16-20). First, as it relates entirely to statements made in the course of a judicial proceeding, the claim is barred by Virginia's litigation privilege. *See Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*, 299 Va. 579, 590 (2021) ("It is settled law in Virginia that words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged.'") (*quoting Darnell v. Davis*, 190 Va. 701, 707 (1950)). Second, for the same reason, Virginia's anti-SLAPP statute applies to the claim. *See, e.g.*, *Fairfax v. CBS Corp.*, 2 F. 4th 286, 296 (4th Cir. 2021) (citation omitted). Third, the claim was not pled with sufficient particularity. *See Gov't Emps. Ins. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (business conspiracy "must be pled with particularity, and with more than 'mere conclusory language'") (*quoting Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)). Finally, the

claim lacks a description of the requisite specific business-related damages suffered by Circinus. *See Stone Castle Fin. Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 663-64 (E.D. Va. 2002) (dismissing business conspiracy claim because plaintiff only alleged "defendants conspired…for the purpose of interfering with and injuring [plaintiff's] business"). For each of the foregoing reasons, the District Court properly dismissed the Broidy Parties' claim for business conspiracy.

## III. THE DISTRICT COURT PROPERLY DISMISSED THE BROIDY PARTIES' CLAIM FOR RICO CONSPIRACY

The District Court also properly dismissed the Broidy Parties' RICO allegations as devoid of any racketeering activity or pattern of such activity.

To sufficiently plead a claim under § 1962(c), a plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Moreover, "a section 1962(c) claim must be established as to each defendant." *Methodist Hosp. of S. California v. Blue Cross of California*, 2010 WL 11508022, at *10 (C.D. Cal. Feb. 26, 2010) (quotations omitted). Here, the Broidy Parties argue that they have alleged a pattern of racketeering activity through two acts of wire fraud—the filing of a complaint and the issuance of a

press release about the same complaint.  Broidy Br. at 51.  While the Broidy

Parties must establish both to be acts of wire fraud, neither qualifies.

First, as the District Court acknowledged, "the filing of a lawsuit cannot

stand as a predicate act supporting [a] RICO claim."  (1-ER-29, 28:25-26:1)

(citations omitted).  Indeed, the Broidy Parties fail to cite a single case in which the

filing of a complaint can serve as a predicate act under RICO.  Were it otherwise,

RICO complaints would be ubiquitous.  Moreover, the Broidy Parties' attempt to

distinguish *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014) and

*Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172 (N.D. Cal. 2001) based on

its assertion that those cases "stand only for the proposition that the threat of or

initiation of litigation does not constitute 'extortion' for purposes of a RICO

claim," not wire fraud, is baseless.  Broidy Br. at 52.  *Papageorge* specifically held

that "[a]busive or sham litigation does not constitute a RICO predicate act,"

without cabining extortion claims.  31 F. Supp. 3d at 13.[8]  Similarly, the court in

*Grauberger* found that "allegations of improper legal filings, which are inevitably

ubiquitous in a litigation society, are best addressed through state law tort remedies

rather than resort to criminal statutes and RICO claims," without mention of a

---

[8] The District Court noted that *Papageorge* "collect[ed] cases," (1-ER-27, 26:4);
*Papageorge* cited eight of them (not including *Grauberger*) for its holding, which
the Broidy Parties ignore. *Papageorge*, 31 F. Supp. 3d at 13.

specific kind of RICO claim. 168 F. Supp. 2d at 1178. That the plaintiffs in *Papageorge* and *Grauberger* pled filing a complaint as extortion instead of wire fraud is irrelevant; both cases stand for the proposition that filing a complaint is not a RICO predicate act.

The District Court further noted that, even if the filing of a complaint *could* be wire fraud, the Broidy Parties "have not adequately pled how initiating the primary suit was tortious or unlawful" and have "pleaded no facts to support this assertion, so the Court cannot credit it." (1-ER-26-27, 25:28-26:1 & n.15). The Broidy Parties cite "abundant allegations throughout the Counterclaims" to dispute this holding, however they conspicuously decline to quote any, because the Broidy Parties never pled the filing of a complaint as wire fraud. Broidy Br. at 53. Instead, the Broidy Parties only made that allegation in their opposition to the Mosafer Parties' motion to dismiss. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).[9]

_____

[9] The Broidy Parties suggest that they could amend the Counterclaim to cure these deficiencies, but because filing of the Complaint cannot constitute wire fraud, amendment would be futile. *See* Broidy Br. at 53; *Saul v. United States*, 928 F.2d 892, 843 (9th Cir. 1991).

Second, "the Broidy Parties have not provided adequate notice that the issuance of a press release is one of the [RICO] predicate acts of which they complain." (1-ER-27, 26:9-11). Again, the Broidy Parties fail to cite to any allegation in their Counterclaim which actually pleads that the press release constitutes wire fraud. *See* Broidy Br. at 53. Regardless, the publishing of a press release is not wire fraud, which requires a demonstration of "specific intent to deceive or defraud." *Spotlight Ticket Mgmt., Inc. v. Stubhub, Inc.*, 2020 WL 4342260 at *4 (C.D. Cal. May 22, 2020). However, the press release as alleged was (presumably) just meant to announce the filing of the Complaint. It does nothing to deceive or defraud the Broidy Parties, who already *knew* about the Complaint. Further, even if the press release were an act of wire fraud, "there is no pattern because the act stands alone." (1-ER-27, 26:15-18); *see also Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 758 (9th Cir. 2015).

While the District Court found that the complete absence of any racketeering activity, let alone two predicate acts, was enough to dismiss the RICO claim against the Mosafer Parties, there are other independent grounds that provide a basis for affirming the District Court's dismissal. For example, even if the Broidy Parties somehow *had* pled two predicate acts (both the Complaint and the press release), that does not necessarily constitute a pattern. To plead "a pattern of racketeering activity a plaintiff …must show that the racketeering predicates are

related, *and* that they amount to or pose a threat of continued criminal activity."

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original).

"There is something to a RICO pattern *beyond* simply the number of predicate acts

involved." *Id.* at 238. Based on the Counterclaim, there is no basis to infer that the

Mosafer Parties had any interest in doing anything, criminal or not, besides

litigating its claims against the Broidy Parties, which is not a "threat of continued

criminal activity." In addition, the Broidy Parties do not plead any "compensable

injury flowing from a violation" of § 1962(c) that "necessarily is the harm caused

by the predicate acts sufficiently related to constitute a pattern." *Anza v. Ideal*

*Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (quoting *Sedima, S.P.R.L. v. Imrex*

*Co.*, 473 U.S. 479, 497 (1985)).

      Finally, recognizing that their claim under § 1962(c) is defective, the Broidy

Parties claim that the District Court erred when it did not allow the Broidy Parties

to amend their complaint and substitute § 1962(d), for RICO Conspiracy instead.

Broidy Br. at 53-54. As an initial matter, the Broidy Parties' bare request in a

footnote was insufficient, and they did not otherwise seek leave of the District

Court to amend. *Id*. at 54 (citing footnote); *see also Ahmadi Abhari v. Victory*

*Park Capital Advisors*, 2020 WL 7346676 at *4 (C.D. Cal. Nov. 16, 2020). Even

if the Broidy Parties' request were procedurally proper, such an amendment would

be futile because § 1962(d) claims may not be asserted "for injuries caused by an

- 56 -

overt act that is not an act of racketeering or otherwise unlawful under the [RICO] statute." *Beck v. Prupis*, 529 U.S. 494, 507 (2000). The proposed amendment would also seem to rest on the allegation that the Mosafer Parties are responsible for predicate acts of racketeering activity, allegedly committed by co-defendants, that occurred years before they purportedly entered the conspiracy. *See Mattel, Inc. v. MGA Ent't, Inc.*, 2010 WL 11463911, at *3 (C.D. Cal. Sept. 3, 2010) ("[O]ne logically cannot contemplate acts committed in furtherance of a conspiracy into which he has not yet entered . . . . [T]he concept of foreseeability (a forward looking concept) must be turned around 180 degrees to be applied to the conduct of co-conspirators occurring before the entry of a particular defendant into the conspiracy."). As a result, the Broidy Parties' argument that the District Court erred when it dismissed the Counterclaims without leave to amend is baseless.

## **CONCLUSION**

For the reasons stated herein, the Mosafer Parties respectfully ask this Court to affirm the order dismissing the Broidy Parties' Counterclaims.

Dated:  March 3, 2023                **LARSON LLP**


By: /s/ *Stephen G. Larson*
    Stephen G. Larson
    Paul A. Rigali
    Jonathan D. Gershon

*Attorneys for Mosafer, Inc.; Mosafer E-Com, Inc.; Gomosafer; Abu Issa Holding WLL; Ashraf Abu Issa; and Nabil Abu Issa*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellants are not aware of any related cases pending before the Court.

Dated:  March 3, 2023                **LARSON LLP**


By: */s/ Stephen G. Larson*
    Stephen G. Larson
    Paul A. Rigali
    Jonathan D. Gershon

*Attorneys for Mosafer, Inc.; Mosafer E-Com, Inc.; Gomosafer; Abu Issa Holding WLL; Ashraf Abu Issa; and Nabil Abu Issa*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,447 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated:  March 3, 2023                     **LARSON LLP**


By: /s/ Stephen G. Larson
    Stephen G. Larson
    Paul A. Rigali
    Jonathan D. Gershon

*Attorneys for Mosafer, Inc.; Mosafer E-Com, Inc.; Gomosafer; Abu Issa Holding WLL; Ashraf Abu Issa; and Nabil Abu Issa*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  March 3, 2023              **LARSON LLP**

By: */s/ Stephen G. Larson*
    Stephen G. Larson
    Koren L. Bell
    Paul A. Rigali
    Jonathan D. Gershon

*Attorneys for Mosafer, Inc.; Mosafer E-Com, Inc.; Gomosafer; Abu Issa Holding WLL; Ashraf Abu Issa; and Nabil Abu Issa*

# <u>ADDENDUM OF STATUES AND RULES</u>

All pertinent constitutional provisions, treaties, statutes, ordinances, regulations or rules are contained in the addendum of Appellants/Cross-Appellees Mosafer, Inc., Mosafer E-Com, Inc., Gomosafer, Abu Issa Holding WLL, Ashraf Abu Issa, and Nabil Abu Issa's Opening Brief and in the addendum of Appellees Broidy Capital Management, LLC, Elliott Broidy and Circinus, LLC's Answering Brief/Cross-Appellants' Opening Brief.